IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA NATIVE PLANT SOCIETY, | No. C06-03604 MJJ |
| Plaintiff, | **ORDER DENYING TEMPORARY RESTRAINING ORDER** |
| v. | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | |
| Defendant. | |

Pending before the Court is Plaintiffs California Native Plant Society, Defenders of Wildlife, and Butte Environmental Council's (collective, "Plaintiffs") Motion for Temporary Restraining Order (Doc. #40).[1] Defendants U.S. Environmental Protection Agency, U.S. Fish and Wildlife Service ("FWS"), and U.S. Army Corps of Engineers ("the Corps") (collectively, "the Federal Defendants") have filed an Opposition to Plaintiffs' Motion (Doc. #59). Additionally, proposed Defendant-Intervenors CP Sundridge, LLC; Danville Land Investments, LLC; Douglas Grantline 103 Investors, LLC; Grantline Investors, LLC; and Cresleigh Homes have filed an Opposition (Doc. #53), as have proposed Defendant-Intervenors Sunridge-Anatolia, LLC (Doc. #46). For the following reasons, the Court **DENIES** Plaintiffs' Motion.

---

[1] Although Plaintiffs filed a Motion for Temporary Restraining Order, their Motion sets forth only minimal argument, and, instead, relies on their Motion for Preliminary Inunction and supporting evidentiary materials to support their request. Accordingly, in ruling on Plaintiffs' Motion for Temporary Restraining Order, the Court is considering the arguments and evidence filed with Plaintiff's Motion for Preliminary Injunction (Doc. #18).

I.  Legal Standard - Temporary Restraining Order

Motions for temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox* Co.*,* 434 U.S. 1345, 1347 n.2 (1977); *Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001). To succeed on a motion for a temporary restraining order, a plaintiff must demonstrate it is entitled to such preliminary relief under either one of two standards. Under the traditional criteria, a plaintiff must show: (1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to plaintiff if the Court does not grant preliminary relief; (3) a balance of hardships favoring the plaintiff; and (4) advancement of the public interest (in certain cases). *Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1158 (9th Cir. 2006). Alternatively, a plaintiff may establish "*either* a combination of probable success on the merits and the possibility of irreparable harm *or* that serious questions are raised and the balance of hardships tips sharply in his favor." *Id*. (emphasis in original). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir. 1985). "Under any formulation of the test, [the] plaintiff must demonstrate that there exists a significant threat of irreparable injury." *Id*. In the absence of a significant showing of irreparable injury, the Court need not reach the issue of likelihood of success on the merits. *See id.* at 1378.

II.  Discussion

    A.  Overview of Plaintiffs' Claims

In their Complaint, Plaintiffs assert claims for: (1) violation of the National Environmental Policy Act ("NEPA") in adopting the Sunrise Douglas Strategy and Plan;[2] (2) violation of NEPA in relying on the Sunrise Douglas Strategy and Plan; (3) violation of the Endangered Species Act's ("ESA") consultation requirements; and (4) unlawful biological opinions under the ESA. The Federal Defendants contend that Plaintiffs have failed to show a likelihood of succeeding on any of their claims, and are therefore not entitled to a TRO. The Court will therefore evaluate each of Plaintiffs' claims, in

---

[2] The Court will refer to this document as the "Conservation Strategy."

2

turn.

B.    Count One

In their first cause of action, Plaintiffs allege that the Federal Defendants have violated NEPA by failing to conduct appropriate environmental review and public disclosure prior to completing the Sunrise Douglas Strategy and Plan. Particularly, Plaintiffs allege that the Federal Defendants "failed to prepare an EA or EIS evaluating the direct, indirect and cumulative environmental impacts of the Plan and failed to assess or consider reasonable alternatives or mitigation measures prior to completing the Sunrise Douglas Strategy and Plan, as required by NEPA," and "did not provide for public notice and opportunity for comment on the Sunrise Douglas Strategy and Plan." (Compl. ¶30.) Plaintiffs therefore assert that the Federal Defendants' actions were "arbitrary and capricious, an abuse of discretion, otherwise not in accordance with law, and without observance of procedures required within the meaning of the Administrative Procedure Act ["APA"] and [are] subject to judicial review thereunder."

The Federal Defendants contend that Plaintiffs have failed to demonstrate a likelihood of succeeding on this claim. Specifically, the Federal Defendants assert that Plaintiffs' claim founded on the Conservation Strategy fails for lack of subject matter jurisdiction because the Strategy does not constitute final agency action, as is required to be reviewable under the APA.

To assert a claim for violation of NEPA, a claimant must bring the claim under § 10(a) of the APA, 5 U.S.C. §702. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990). This section of the APA contains two requirements. First, the claimant must identify some agency action that has adversely affected him. *Id*. "Second, the party seeking review under §702 must show that he has 'suffer[ed] legal wrong' because of the challenged agency action, or is 'adversely affected or aggrieved' by that action 'within the meaning of a relevant statute.'" *Id*.

As to the first requirement, pursuant to 5 U.S.C. §701(b)(2), the meaning of "agency action" for purposes of §702 is set forth in 5 U.S.C. § 551(13), which provides that agency action is "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial therefore, or failure to act." *Id*. When the claimant seeks review under the general review provisions of the APA, as Plaintiffs do here, the agency action must be "final agency action." *Id*. (citing 5 U.S.C. §704). The

3

United States District Court
For the Northern District of California

1  Supreme Court has explained that for an agency action to be "final," two conditions must be met. *See*
2  *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). "First, the action must mark the 'consummation' of the
3  agency's decisionmaking process[] - it must not be of a merely tentative or interlocutory nature. And
4  second, the action must by one by which 'rights or obligations have been determined,' or from which
5  'legal consequences will flow.'" *Id*. (quoting *Port of Boston Marine Terminal Ass'n v.*
6  *Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)).

7  Here, the Federal Defendants charge that Plaintiffs cannot show that the Conservation Strategy
8  qualifies as a final agency action under the APA. In support, the Federal Defendants argue that they
9  issued the Conservation Strategy in June 2004 as preliminary advice to assist developers with the
10 permitting process, and offer the following explanation:

> The Strategy Document is couched as advice provided for informational purposes only. It does not state or purport to state findings or decisions with regard to any permit applications or requests for a biological opinion. It does not render a decision on any permit application or any other requests for governmental approval or action. Nor does it provide a guarantee or assurance of how the Corps will act on any permit application or how any agency will decide any issue or request for governmental action or approval.

Additionally, the Federal Defendants proffer that "[b]oth the permitting process and the subsequent interaction with environmental representatives and the regulated community further demonstrate that the agencies did, in fact, treat it as preliminary advice in a multi-stage process of interaction and communication between the Corps and permit applicants." Given these characteristics, the Federal Defendants argue that Plaintiffs cannot establish that the Conservation Strategy was a "final agency action" under the APA, and, consequently, cannot demonstrate a likelihood of succeeding on the merits of their first cause of action.

The Court agrees with the Federal Defendants. Reviewing Plaintiffs' brief and considering their statements at the TRO hearing, Plaintiffs have failed to adequately articulate how the creation and issuance of the Conservation Strategy, standing alone, qualifies as final agency action for purposes of APA review. As the Federal Defendants point out, the Conservation Strategy is advisory in nature, does not set forth any findings or ultimate determinations regarding specific requests or development permit applications, and expressly states that permit decisions and biological opinions will subsequently be reviewed on an individual basis. At this juncture, Plaintiffs have failed to present any argument or

4

evidence suggesting, particularly in light of the foregoing characteristics, that the Conservation Strategy constitutes final agency action under the APA. The Court therefore finds that Plaintiffs have not shown any likelihood of succeeding on their APA claim for violation of NEPA in adopting the Conservation Strategy.

C.   Count Two

In count two, Plaintiffs assert another claim for violation of NEPA, this time based on the Federal Defendants' *reliance* on the Conservation Strategy. Plaintiffs allege that: (1) FWS relied on the Strategy to support its approval under section 7 of the ESA for two development projects within the Community Plan area and issued "no jeopardy" biological opinions for the North Douglas and Montelena Projects proposed by Lennar Communities and Centex Homes; (2) the Corps relied on the Strategy to issue permits under section 404 of the CWA for the North Douglas and Montelena Projects;[3] and (3) the EPA has indicated that it will not exercise its authority to elevate certain projects requiring a CWA section 404 permit that impact aquatic resources of national importance based on the Strategy and did not elevate the permits issued to Lennar Communities and to Centex Homes for the North Douglas and Montelena Projects. (Compl. ¶33.) Plaintiffs further allege that "Defendants violated and continue to violate NEPA in approving the North Douglas and Montelena Projects by failing to prepare a cumulative impacts analysis for all present and reasonably foreseeable future development projects within the Sunrise Douglas Community Plan area or to evaluate a reasonable range of alternatives to and mitigation measures for the [Plan]." (Compl. ¶34.) Plaintiffs therefore assert that the federal Defendants reliance on the Plan in approving the permits issued for the North Douglas Project proposed by Lennar Communities and the Montelena Project proposed by Centex Homes, as well as Defendants purported intention to rely on the Plan in approving other projects in the Community Plan area, is arbitrary and capricious, an abuse of discretion, is otherwise not in accordance with law, and is without observance of procedures required by law within the meaning of the APA, and is subject to review

---

[3]The Court notes that Plaintiffs have filed a Motion for Leave to File an Amended Complaint, wherein Plaintiffs include new allegations regarding permits issued to developers after Plaintiffs initiated this action. For purposes of the instant Motion for TRO, however, the Court limits its consideration to the claims as cast in the original Complaint and record now before the Court. Accordingly, the Court only considers Plaintiffs' claims premised on the issuance of the two permits enumerated above.

5

thereunder. (Compl. ¶36.)

Focusing their attention more on their Corps use of the Strategy in its permit application review process, in their Motion for Preliminary Injunction, Plaintiffs first contend that "the Conservation Strategy is a major federal action upon which [the] Federal Defendants now routinely rely in making other agency decisions that allow development and is, therefore subject to NEPA." Thus, Plaintiffs charge that "[t]he federal agencies' failure to undertake NEPA review for the Conservation Strategy was, therefore, unreasonable and unlawful." Further, they argue that "[b]y expressly relying on and tiering back to the unreviewed and unanalyzed Conservation Strategy when it evaluates the environmental impacts for each individual development project in the Sunrise Douglas area, the Corps fails to consider the two most critical NEPA concerns: cumulative impacts and reasonable alternatives."

In their Opposition, the Federal Defendants argue that Plaintiffs cannot succeed on their NEPA claim for three reasons. First, they argue that Plaintiffs are unable to establish that the Conservation Strategy qualifies as a final agency action that is reviewable under the APA. Second, they contend that Plaintiffs are unable to establish that the Conservation Strategy constitutes "major federal action" triggering the NEPA review requirements. Third, the Federal Defendants assert that the Corps has complied or will comply with NEPA's procedural requirements by taking a "hard look" at the environmental consequences of the individual permits and projects associated with them. The Court will evaluate each of the Federal Defendants' challenges, in turn.

The Federal Defendants first contend that Plaintiffs cannot establish that the Conservation Strategy amounts to final agency action that is reviewable under the APA. As indicated above, Plaintiffs have failed to raise a serious question that the issuance of the Conservation Strategy, in isolation, amounts to final agency action under the APA. However, as the Court interprets Plaintiffs' second claim, the alleged action is broader than just the Federal Defendants' issuance of the Conservation Strategy. Rather, Plaintiffs are alleging that the issuance of the Conservation Strategy and the Federal Defendants' subsequent reliance and use of the Strategy in making decisions regarding permit applications constitutes agency action. Assuming this activity, collectively, amounts to a conclusive decision that affect the rights of the permit applicants, Plaintiffs have at least raised a serious question

6

as to whether the Federal Defendants' conduct amounts to final agency action. *See Bennett*, 520 U.S. at 177-78. The Court therefore turns its attention to the Federal Defendants' remaining arguments regarding the Federal Defendants' purported failure to comply with NEPA's procedural requirements.

As the Ninth Circuit recently explained in *'Ilio'Ulaokalani Coalition v. Rumsfeld*, 464 F.3d 1083, 1093 (9th Cir. 2006):

> The National Environmental Policy Act of 1969, commonly known as NEPA, "is our basic national charter for protection of the environment." 40 C.F.R. § 1500.1(a) (2006). The regulations implementing NEPA have developed procedures to "insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken. The information must be of high quality. Accurate scientific analysis, expert agency comments, and public scrutiny are essential to implementing NEPA." *Id.* § 1500.1(b).
> Congress passed NEPA "to protect the environment by requiring that federal agencies carefully weigh environmental considerations and consider potential alternatives to the proposed action before the government launches any major federal action." *Lands Council v. Powell*, 395 F.3d 1019, 1026 (9th Cir.2005). "NEPA requires that a federal agency consider every significant aspect of the environmental impact of a proposed action ⋯ [and] inform the public that it has indeed considered environmental concerns in its decisionmaking process." *Earth Island Inst. v. U.S. Forest Serv.*, 351 F.3d 1291, 1300 (9th Cir.2003) (internal quotation marks and citations omitted). "[T]o accomplish this, NEPA imposes procedural requirements designed to force agencies to take a 'hard look' at environmental consequences." *Id.* NEPA does not, however, mandate any substantive outcome. *Lands Council*, 395 F.3d at 1026. Under NEPA, all federal agencies, including the Army, must prepare an environmental impact statement ("EIS") for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). That EIS "shall provide full and fair discussion of significant environmental impacts and shall inform decisionmakers and the public of the reasonable alternatives which would avoid or minimize adverse impacts or enhance the quality of the human environment." 40 C.F.R. § 1502.1.

Thus, the threshold question affecting Plaintiffs' NEPA claim is whether the Conservation Strategy and the Corps' use of it amounts to "major federal action," triggering NEPA's procedural requirements. The Federal Defendants argue that Plaintiffs cannot make this showing. In support, they re-assert that the Conservation Strategy is advisory in nature and does not affect or otherwise restrict the Corps' discretion to deny a permit even, if the applicant satisfied the standards and conditions articulated in the Conservation Strategy. Plaintiffs, however, contend that the Conservation Strategy was the result of months of negotiations between the Federal Defendants and development interests, and is intended to be a blueprint for future development in the Sunrise Douglas Community Planning Area. Plaintiffs also

7

submit that "[c]ompliance with the Conservation Strategy ensures that a developer will secure all federal approvals for a Sunrise Douglas project[.]" Finally, Plaintiffs proffer that the FWS relied on implementation of the Conservation Strategy as the basis for its biological opinions regarding vernal pool impacts, "no jeopardy" determination, and incidental take statements in connection with at least nine development projects in the Plan Area. Plaintiffs therefore maintain that they have made a sufficient showing regarding the "major federal action" requirement. At the stage of the proceedings, the Court finds that Plaintiffs have at least made a colorable argument that the Conservation Strategy and the Corps' utilization of the Strategy when evaluating permit applications meets this definitional requirement of major federal action, thereby triggering NEPA's requirements. The Court will therefore assume for purposes of the instant Motion for TRO, that Plaintiffs have demonstrated major federal action.

Assuming major federal action was taken, the question then becomes whether Plaintiffs have adequately demonstrated a likelihood of succeeding on their claim that the Federal Defendants failed to comply with NEPA's procedural requirements. As previously mentioned, on this issue, Plaintiffs argue that the Federal Defendants' failure to prepare a NEPA analysis on the Conservation Strategy, including a cumulative impacts analysis and a reasonable alternatives analysis, and the Corps' repeated reliance on and tiering back on the unreviewed Conservation Strategy when evaluating environmental impacts for each individual development project, violates NEPA's procedural requirements. With respect to the cumulative impacts, Plaintiffs submit:

> By failing to complete a NEPA analysis for the Conservation Strategy, [the] Federal Defendants . . . failed to assess the cumulative impacts of implementing the [S]trategy's vernal pool take and preservation plan across the Sunrise Douglas Community Planning Area. Then, when the Corps got around to the first project permitted under the Conservation Strategy, the site-specific NEPA review omitted any areawide cumulative impacts analysis and, instead, concluded that implementation of the Conservation Strategy would avoid significant cumulative impacts. [] Yet there has never been a cumulative effects analysis prepared for the Conservation Strategy, nor have the public or independent scientific experts ever had a formal opportunity to comment on the cumulative effects of the [S]trategy. This omission is particularly troubling given the [S]trategy's inconsistency with the Recovery Plan, which calls for preservation of 95 percent of the remaining Mather Core Recovery Unit vernal pool habitat when over 13 percent of that habitat will be destroyed under the Conservation Strategy.

(Mot. for P.I. at 22-23.) Thus, Plaintiffs' conclude that, "[g]iven the paucity of a cumulative impacts

8

analysis for the Conservation Strategy as a whole, Plaintiffs are likely to succeed on the merits of their claim." (*Id*. at 23.)

With respect to the NEPA's reasonable alternatives requirement, Plaintiffs assert that, in its first environmental assessment after issuance of the Conservation Strategy, the Corps limited its alternatives analysis to the principles and standards set forth in the Strategy. Plaintiffs also submit that correspondence between the Federal Defendants and certain developers regarding the issuance of the Conservation Strategy indicates "that the so-called 'alternatives' analysis for each project will follow this same unlawful process of tiering back to a document that has not yet received NEPA scrutiny." Plaintiffs thus argue that by restricting their alternatives analysis to the bounds of the Conservation Strategy, the Federal Defendants "avoided any discussion of whether the Conservation Strategy itself was the best alternative for the development or preservation of the region," and "ignored significant conservation concerns that might have generated different land use patterns."

The Court has considered Plaintiffs' argument and reviewed the record evidence they have cited in support, and finds that based on the materials before the Court, Plaintiffs have failed to raise a serious question that the Federal Defendants failed to comply with NEPA's procedural requirements. As the Federal Defendants point out, prior to issuing any permits, the Corps has examined the potential environmental consequences of each application. Particularly, the Federal Defendants cite to the Environmental Assessment for the North Douglas applications, which includes both an alternatives analysis and a cumulative impacts analysis based on the proposed development. Plaintiffs have failed to raise serious questions regarding whether the assessments prepared in relationship to the permit applications were arbitrary or capricious, and therefore in violation of NEPA's requirements. Moreover, the Court is unpersuaded by Plaintiffs' argument that the Corps improperly segmented review of cumulative impacts. Rather, as the Federal Defendants note, "Plaintiffs' suggestion that the Corps be required to include in one NEPA analysis the potential cumulative impacts of every project that took or will take advice provided in the [Conservation Strategy] is a suggestion that the Corps do the impractical, as not every potential project in the SunRidge Specific Planning area contained sufficient detail necessary for proper evaluation at the time of the creation of the Strategy Document." Finally, Plaintiffs have not presented any argument or presented any evidence suggesting that the Corps' review

9

1  of any specific application was deficient. Based on the foregoing, the Court finds that Plaintiffs have
2  failed to raise any serious questions that the Federal Defendants' issuance and reliance on the Strategy
3  Document was arbitrary and capricious or otherwise contravened NEPA's procedural requirements.[4]

### D. Count Three

In Plaintiffs' third cause of action, Plaintiffs assert a claim for violation of the ESA consultation requirements. They allege that the Federal Defendants "violated and continue to violate section 7(a)(2) of the ESA by failing to ensure through consultation that the Sunrise Douglas Strategy and Plan will not jeopardize the continued existence of threatened and endangered species, including the vernal pool fairy shrimp, the vernal pool tadpole shrimp, the Sacramento Orcutt grass, and the slender Orcutt grass, or destroy or adversely modify their critical habitat." Plaintiffs assert that these violations are both subject to judicial review under 16 U.S.C. §1540(g), and are reviewable under the APA, 5 U.S.C. §706(2).

As to Plaintiffs' claim under §1540(g) of the ESA, the Federal Defendants contend that Plaintiffs cannot show any likelihood of succeeding on their claim because they cannot establish that the Conservation Strategy amounted to "agency action" under the ESA. Plaintiffs, however, maintain that the Conservation Strategy fits within the broad definition of "agency action," subjecting the Federal Defendants to the ESA's consultation requirements.

Section 1536(a)(2) of the ESA provides:

> Each Federal agency shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency (hereinafter in this section referred to as an "agency action") is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary, after consultation as appropriate with affected States, to be critical, unless such agency has been granted an exemption for such action by the Committee pursuant to subsection (h) of this section. In fulfilling the requirements of this paragraph each agency shall use the best scientific and commercial data available.

The Ninth Circuit has advised that courts are to construe the term "agency action" broadly. *See Natural Res. Def. Council v. Houston*, 146 F.3d 1118, 1125-26 (9th Cir. 1998); *Pac. Rivers Council v. Thomas*,

---

[4] The Court reiterates that this decision is based on the controlling original Complaint and evidentiary record currently before the Court, and shall not be interpreted as foreclosing Plaintiffs from seeking preliminary injunctive relief on this claim based on their proposed Amended Complaint and a supplemented record.

10

30 F.3d 1050, 1055 (9th Cir. 1994). Thus, "[a]n action is an 'agency action' if there is discretionary Federal involvement or control.'" *Marbled Murrelet v. Babbitt*, 83 F.3d 1068, 1073 (9th Cir. 1996) (quoting *Sierra Club v. Babbitt, Seneca*, 65 F.3d 1502, 1509 (9th Cir. 1995)).

Citing *Marbeled Murrelet*, the Federal Defendants argue that the Ninth Circuit has held an agency's advice to parties on how to comply with statutes that agency has jurisdiction over, where such advice had no legal force or effect, did not constitute "agency action" under the ESA. 83 F.3d at 1074-1075. Specifically, at issue in that case was whether FWS letters providing advice on how certain lumber companies could avoid a "take" under section 9 of the ESA qualified as agency action. The Ninth Circuit held that the plaintiffs had failed to raise serious questions warranting injunctive relief on this issue. Particularly, the court noted found "such advisory activity does not constitute discretionary involvement or control over the [l]umber [c]ompanies' proposed tree harvest operations." *Id*. at 1075. Based on the current record, the Court reaches the same conclusion in this matter. Plaintiffs have failed to proffer any persuasive argument that the Conservation Staregy evinces the Federal Defendants' involvement or control of the permitting process. Rather, as the Federal Defendants point out, the Conservation Strategy does not set forth any of the conditions in mandatory language, and the participating federal agencies lacked power to enforce the provisions of the document. The Court therefore agrees with the Federal Defendants that, at this juncture, Plaintiffs have failed to raise serious questions that the issuance of the Conservation Strategy amounted to agency action triggering the ESA's consultation requirements.

With respect to Plaintiffs' claim under the APA, as detailed above, because Plaintiffs have failed to adequately demonstrate that the Conservation Strategy amounted to final agency action, their claim that the Federal Defendants failed to comply with the ESA's consultation requirements in issuing the Strategy are not reviewable under the APA.

E.   Count Four

In their fourth cause of action, Plaintiffs assert a claim for violation of the ESA based on the FWS's issuance of biological opinions for the North Douglas Project and the Montelena Project. Plaintiffs allege that the biological opinions failed to utilize the best available science, as required by 16 U.S.C. §1536(a)(2), and failed to consider cumulative effects as required by 50 C.F.R. §402.14,

11

1  making the Federal Defendants' actions "arbitrary and capricious, an abuse of discretion, otherwise not
2  in accordance with law, and without observance of procedures required by law within the meaning of
3  the [APA] and is subject to judicial review thereunder." Plaintiffs thus request that the Court set aside
4  and vacate the permits issued to Lennar Communities and Centex Homes because the permits relied
5  upon the Conservation Strategy.

6  The Federal Defendants argue that Plaintiffs cannot show a likelihood of success on the merits
7  with respect to their ESA claim attacking the legality of the permits because Plaintiffs failed to comply
8  with the ESA's notice requirements, thereby barring their claim.

9  Section 11(g)(1)(A) of the ESA, 16 U.S.C. §1540(g)(1)(A), provides that "any person may
10 commence a civil suit on his own behalf - - to enjoin any person, including the United States and any
11 other governmental instrumentality or agency [], who is alleged to be in violation of any provision of
12 this chapter or regulation issued under the authority thereof[.]" Pursuant to §1540(g)(2)(A)(i), the
13 plaintiff may not initiate a lawsuit under §1540(g)(1)(A) until 60 days after written notice of an alleged
14 violation has been given to both the Secretary and the alleged violator of the provision or regulation.
15 *See Southwest Ctr. For Biological Diversity v. Bureau of reclamation*, 143 F.3d 515, 520 (9th Cir. 1998).
16 The Ninth Circuit has held that this requirement is jurisdictional. *Id*. Thus, "[a] failure to strictly
17 comply with the notice requirement acts as an absolute bar to bringing suit under the ESA." *Id*.

18 Here, the Federal Defendants assert that, while Plaintiffs may have submitted a 60-day notice
19 to the Federal Defendants regarding the Conservation Strategy on March 26, 2006, this Notice preceded
20 the Corps' issuance of the permits for the projects that Plaintiffs seek to have the Court enjoined. Thus,
21 the Federal Defendants argue that, because Plaintiffs submitted the Notice before the alleged violation
22 of the ESA occurred, namely, the issuance of the permits, that Notice cannot satisfy the ESA's 60-day
23 notice requirement with respect to Plaintiffs' ESA claim attacking the validity of the permits.
24 Accordingly, they assert that Plaintiffs cannot succeed on count four.

25 Based on the current evidentiary record, the Court agrees with the Federal Defendants. Plaintiffs
26 have failed to proffer any evidence that they complied with the ESA's 60-notice requirement with
27 respect to their ESA challenges to the individual permits and projects. The Court therefore concludes
28 that Plaintiffs have failed to show a likelihood of succeeding on their ESA claim concerning the

12

individual permits and projects, or raise serious questions with respect to such claims.

Further, the Federal Defendants argue that, to the extent Plaintiffs seek to bring their claim against the Corps under the APA, they cannot show a likelihood of succeeding on such a claim. Specifically, the Federal Defendants contend that, to the extent that Plaintiffs are seeking to enjoin the Corps from issuing permits and seeking to enjoin activities authorized pursuant to the permits that the Corps has already issued because they violate the ESA, Plaintiffs must bring those claims pursuant to the citizen suit provision of the ESA. As a result, the Federal Defendants argue that Plaintiffs must comply with the 60-day notice requirement. Because Plaintiffs did not provide notice as to any ESA claims founded on the biological opinions, the Federal Defendants argue that Plaintiffs are barred from pursuing such claims in this action, and therefore cannot show a likelihood of success on the merits for purposes of preliminary injunctive relief.

As the Federal Defendants correctly point out, the APA authorizes suits only for "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in court[.]" 5 U.S.C. §704. As detailed above, §1540(g)(1)(A) provides that a citizen may bring a lawsuit "to enjoin any person, including the United States and any other governmental instrumentality or agency[], who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof." 5 U.S.C. §1540(g)(1)(A). Plaintiffs' request that the Court enjoin the Corps from issuing additional permits and enjoin the current permit holders from proceeding with development authorized by their permits because the permits relied on purportedly inadequate biological opinions. The ESA's citizen suit provision therefore provides an adequate avenue for Plaintiffs to seek redress for any alleged violations of the ESA stemming from the Corps' issuance of permits. Consequently, Plaintiffs were required to comply with the ESA's 60-day written notice provision before bringing their claim. Because Plaintiffs have not provided any evidence demonstrating that they satisfied this prerequisite, the Court agrees with the Federal Defendants that Plaintiffs cannot show a likelihood of succeeding on their claim or that they have raised serious questions on the merits of their claim.

Alternatively, the Federal Defendants contend that Plaintiffs have no likelihood of succeeding on APA claims challenging the biological opinions because Plaintiffs failed to properly plead such claims. Specifically, the Federal Defendants argue that, in Plaintiffs' initial Complaint, Plaintiffs only

13

challenged the validity of two specific biological opinions that Plaintiffs charge did not rely on the best available science. (*See* Compl. ¶41.) However, in their Motion for a Preliminary Injunction, Plaintiffs indicate that "they are not seeking at this time injunctive relief as to construction of [the North Douglas and Montelena] projects[.]" Rather, Plaintiffs indicate that they are challenging the biological opinions associated with Riverwest/Sunridge Park, Anatolia IV, Douglas Road 98, and Sunridge Village J. (*See* Doc. #40, Motion for TRO at 2.) The Federal Defendants assert that, because Plaintiffs did not allege challenges to these biological opinions in their Complaint, the Court lacks jurisdiction over them. The Court has reviewed Plaintiffs' Complaint, Motion for Preliminary Injunction, and Motion for a TRO, and agrees with the Federal Defendants that, although Plaintiffs seek to challenge the validity of the biological challenges to the Riverwest/Sunridge Park, Anatolia IV, Douglas Road 98, and Sunridge Village J projects, Plaintiffs did not include allegations to that effect in their initial Complaint. Accordingly, based on the current pleadings before the Court, the Court lacks jurisdiction to adjudicate any request for injunctive relief with respect to biological opinions regarding these enumerated projects. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *Stewart v. U.S. Immigration & Naturalization Serv.*, 762 F.2d 193, 198-99 (2nd Cir. 1985); *Adair v. England*, 193 F. Supp. 2d 196, 200 (D.D.C. 2002).[5] Accordingly, Plaintiffs cannot show a likelihood of succeeding on the merits of their claim to enjoin the Corps from issuing additional permits and to suspend activity on the permits that it previously issued.

In sum, the Court finds that because Plaintiffs have failed to comply with the 60-day notice requirement under the ESA before filing their claims and have failed to properly plead their challenges to the biological opinions regarding the four projects enumerated above in their initial Complaint, Plaintiffs have failed to make the requisite showing of success on the merits to support issuance of a TRO.

F.     Summary

In sum, as to each of their four claims, Plaintiffs have not shown either a probably success on the merits or raised serious questions regarding the merits of the claims. Consequently, the Court finds

---

[5]The Court notes that following their Motion for TRO, Plaintiffs filed a Motion for Leave to file an Amended Complaint. Plaintiffs indicate that they are seeking to add allegations concerning the additional projects. Thus, the proposed Amended Complaint may moot this argument.

14

that Plaintiffs have failed to demonstrate that they are entitled to a temporary restraining order. Further, because the Court finds that Plaintiffs have failed to demonstrate a likelihood of succeeding on their claims, or that serious questions going to the merits of the claims exist, the Court declines to address the remaining factors.

III.   Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Temporary Restraining Order (Doc. #40).

Additionally, the Court hereby sets a telephonic status hearing in this case to discuss the briefing schedule on the pending Motion for Preliminary Injunction for November 7, 2006, at 1:30 p.m.[6]

**IT IS SO ORDERED.**

Dated: November 3, 2006

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiffs shall initiate the conference call amongst the parties and call into chambers ((415) 522-4141) at the stated time.

15