IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA NATIVE PLANT SOCIETY,<br><br>             Plaintiff,<br><br>   v.<br><br>UNITED STATES ENVIRONMENTAL<br>PROTECTION AGENCY,<br><br>             Defendant. | No. C06-03604 MJJ<br><br>**ORDER REGARDING DISPUTES OVER JURISDICTIONAL DISCOVERY** |

## INTRODUCTION

Before the Court are several discovery disputes raised by letter briefs from Plaintiffs California Native Plant Society, Defenders of Wildlife, and Butte Environmental Council (collectively "Plaintiffs") and federal agency Defendants Environmental Protection Agency ("EPA"), U.S. Army Corps of Engineers ("Corps"), and U.S. Fish and Wildlife Service ("FWS") (collectively "Agencies").

The letter briefs contest whether Agencies correctly withheld documents from discovery based on the deliberative process privilege, and whether Agencies adequately answered certain of Plaintiffs' interrogatories. Regarding the deliberative process privilege, Plaintiffs request that the Court either order Agencies to produce the documents in dispute, or order *in camera* review to determine whether the documents should be disclosed. (Plaintiffs' Jan. 25, 2008 Letter Brief ("Pls.'

Letter") at 3, 5.) Regarding the interrogatories, Plaintiffs request that the Court order Agencies to respond more fully. (*Id.* at 4–5.) Agencies contend they both appropriately invoked the deliberative process privilege and should not be required to answer the interrogatories more fully. (Defendants' Jan. 25, 2008 Letter Brief ("Defs.' Letter") at 2–5.)

For the following reasons, the Court **ORDERS** Agencies to supplement their privilege logs with more detailed information as to how the documents in question fit into the deliberative process. The Court additionally **ORDERS** FWS and Corps to respond more fully to Interrogatory No. 20, and EPA to respond more fully to Interrogatory No. 21. In all other respects, the Court denies the relief sought by Plaintiffs.

## FACTUAL BACKGROUND

Plaintiffs filed suit for declaratory and injunctive relief, claiming that Agencies violated several federal laws when approving a Conceptual Strategy for the Sunrise Douglas development area. (*See* Third Amended Complaint at 1–2.) In particular, Plaintiffs allege Agencies violated the National Environmental Policy Act (NEPA), Endangered Species Act (ESA), Clean Water Act, and Administrative Procedures Act. (*Id.* at 16–21.) Plaintiffs moved for, and the Court granted, limited discovery in order to provide the factual basis required to establish subject matter jurisdiction. (August 29, 2007 Order After Hrg. ("Aug. 29 Order") at 1; *see also* Mem. in Support of Mot. to Conduct Jurisdictional Discovery ("Mem. In Support of Discovery").) Specifically, Plaintiffs seek to show that the Conceptual Strategy constitutes a "final agency action." (*See* Mem. In Support of Discovery.) In response to Plaintiffs' discovery requests, Agencies claimed the deliberative process privilege for a number of documents, and took issue with a number of Plaintiffs' interrogatories.

## LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure allows discovery of non-privileged relevant documents. *See* Fed. R. Civ. P. 26. Courts may narrow the scope of this discovery, and Rule 26 should not be interpreted to authorize "fishing expeditions." *See* Fed. R. Civ. P. 26(b)(2)(C); *see also Groom v. Standard Ins. Co.*, 492 F. Supp. 2d 1202, 1205–06 (C.D. Cal. 2007) (limiting discovery to certain aspects pertinent to the decision-making process).

When deciding which documents are privileged as part of the deliberative process, and thus exempt from discovery, courts should construe the privilege narrowly and strictly. *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980); s*ee also Dowling v. Am. Haw. Cruises, Inc.*, 971 F.2d 423, 425 (9th Cir. 1992) (discussing privileges generally). *In camera* review is an appropriate method for courts to consider the applicability of the deliberative process privilege. *See Nat'l Wildlife Fed'n v. U.S. Forest Service*, 861 F.2d 1114, 1116 (9th Cir. 1988) (holding that the district court appropriately reviewed documents *in camera*, on remand to do so). However, agencies should be given the opportunity to prove, by other means, that the privilege applies. *E.P.A. v. Mink*, 410 U.S. 73, 93 (1973) ("[I]n some situations, in camera inspection will be necessary and appropriate. But it need not be automatic.").

**DISCUSSION**

**I.  Deliberative Process Privilege**

Plaintiffs object to Agencies' invocation of the deliberative process privilege to protect documents from discovery. Plaintiffs claim that: (1) Agencies' invocation of the deliberative process privilege goes to show that the action in question was a "final agency action;" (2) Agencies' privilege logs were inadequate to claim the privilege; and (3) in the alternative, if Agencies appropriately asserted the privilege, it is qualified, and Plaintiffs' need for the documents outweighs the privilege. (Pls.' Letter at 1–3.)

The deliberative process privilege allows the government to withhold from discovery agency documents consisting of deliberative analysis preceding agency decisions. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–51 (1975); *Carter v. U.S. Dept. of Commerce*, 307 F.3d 1084, 1088–89 (9th Cir. 2002); *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).[1]

---

[1] Most cases cited by the parties, including *Sears* and *Carter*, pertain to disclosures under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, not disclosures under the discovery process. *See Sears*, 421 U.S. at 148–50; *Carter*, 307 F.3d at 1088. With minor exceptions, these cases are generally applicable to the discovery context.

FOIA's fifth exemption allows agencies to avoid producing documents that "would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). Accordingly, exemptions under FOIA often revolve around whether a document would be discoverable during litigation. *See, e.g., Sears*, 421 U.S. at 148–50; *Mink*, 410 U.S. at 85–86; *Carter*, 307 F.3d at 1088. Thus the requirements for the deliberative process privilege are appropriately discussed in these cases.

However, it does not appear that FOIA cases are *always* germane to the discovery context. For example, when discussing the government's burden, FOIA cases cite to 5 U.S.C. Section 552—which plays no role in the discovery context. *Compare Chevron U.S.A., Inc. V. U.S.,* 2008 WL 312297 at *17 (Fed. Cl. Jan. 31, 2008) (discussing shifting burdens from

3

The privilege is intended to promote frank, honest communications among government employees in order to promote well-vetted policies. *See Sears*, 421 U.S. at 150–51. Underlying the privilege is the belief that "'those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decision making process.'" *Id.* (citing *United States v. Nixon*, 418 U.S. 683, 705 (1974)).

An agency must show that a document is both pre-decisional and deliberative in order to qualify for the deliberative process privilege. *See Warner*, 742 F.2d at 1161; *Carter*, 307 F.3d at 1089. A document is "pre-decisional" if it predates a decision and was prepared to assist in making the decision. *See Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975); *Warner*, 742 F.2d at 1161. A document is "deliberative" if it exposes personal opinions such that releasing the document "would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Carter,* 307 F.3d at 1090.

Under this framework, the Court now examines Defendants' assertion of the privilege and Plaintiffs' points in opposition thereto.

**A.  The Deliberative Process Privilege Does Not Require Final Agency Action.**

Plaintiffs assert that Agencies' use of the deliberative process privilege demonstrates that the action in question was indeed a "final agency action." (Pls.' Letter at 2.) This argument is not persuasive. The privilege protects the decision making process at large, and a document need not lead to a specific decision, let alone a final decision, in order to be protected. *Sears*, 421 U.S. at 151 n.18. "Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process." *Id.*; *see also Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1280

---

defendants to plaintiffs in the discovery setting), *with Cooper Cameron Corp. v. U.S. Dept of Labor, Occupational Safety and Health Administration*, 280 F.3d 539, 543 (5th Cir. 2002) ("The [FOIA] statute 'expressly places the burden 'on the agency to sustain its action'. . . . '"); *and Parke, Davis & Co. v. Califano*, 623 F.2d 1, 7 (6th Cir. 1980) (citing to FOIA to conclude that the agency "failed to carry its burden").

4

(11th Cir. 2004) (focusing on the role the document played in the deliberative process as a whole, not a specific, final decision).

Plaintiffs cite Ninth Circuit cases using more narrow language, suggesting that documents must actually contribute to a decision in order to be privileged. *See Assembly of Cal. v. U.S. Dept. of Commerce*, 968 F.2d 916, 921 (9th Cir. 1992) ("[m]aterial which . . . did not contribute to [the] decision, is not predecisional . . . ."); and *Carter*, 307 F.3d at 1089 (quoting same). However, those cases did not exclude deliberative documents from the privilege solely because they did not lead to a specific decision; rather, they were excluded because they were not part of the decision-making process as a whole. *See Assembly*, 968 F.2d at 921; *Carter*, 307 F.3d at 1089–90. Indeed both cases cite to the Supreme Court's language that the documents must only be "***prepared in order to assist*** an agency decisionmaker in arriving at his decision." *Grumman*, 421 U.S. at 184 (emphasis added) (cited by *Assembly*, 968 F.2d at 921; *Carter*, 307 F.3d at 1089). Squaring this with the above language from *Sears* (issued the same day as *Grumman*), it appears that the Supreme Court meant to protect documents that were part of the decision-making process, regardless of a "final decision." *See, e.g.*, *Coastal States*, 617 F.2d at 865–66 (considering the decision-making process as a whole).[2]

In short, Agencies' invocation of the deliberative process privilege does not allow the Court to conclude that the action in question was a "final agency action."

**B.     Agencies' Privilege Logs Are Not Sufficient.**

Plaintiffs contend that Agencies' privilege logs are inadequate because they: (1) do not provide sufficient detail, and (2) do not prove that Agencies' frank discussions would be harmed by disclosure in the present case. (Pls.' Letter at 2.) Agencies contest both assertions. (Defs.' Letter at 4–5.) The Court takes each of Plaintiffs' two concerns in turn.

///

///

///

---

[2] Moreover, Plaintiffs do not show that the term "decision" as used by the Ninth Circuit is analogous to a "final agency action" as the term is used in the current litigation. *See, e.g.*, *Judicial Watch, Inc. v. Clinton*, 880 F.Supp. 1, 13 (D.D.C. 1995) (discouraging "semantics over substance" and finding that non-action could constitute a final decision, or that a decision making process could lead to no decision but still be covered by the privilege).

5

### 1. The Privilege Logs Do Not Provide Sufficient Detail to Identify Deliberative Material.

Plaintiffs claim that Agencies' privilege logs are inadequate because they do not contain enough detail. (Pls.' Letter at 2.) Specifically, Plaintiffs contend that it is not clear whether the documents address solely factual matters or whether they address the deliberative process. (*Id.*) In response, Agencies assert that the logs are adequately detailed, and submit declarations by agency officials attesting to the privileged nature of the documents.[3] (Defs.' Letter at 5–6, & Exs. 12–14.) The Court finds, however, that the level of detail provided in Agencies' logs and declarations is, on the whole, insufficient for the Court to come to a conclusion as to whether specific documents are privileged.

In order for a document to be "deliberative" it should disclose the personal opinions or "mental processes of decision-makers." *See Carter*, 307 F.3d at 1090; *Coastal States*, 617 F.2d at 866, 868–69. Traditionally, material consisting of an opinion is protected as deliberative, but "purely factual material . . . is not protected." *Warner*, 742 F.2d at 1161 (citing to *Mink*, 410 U.S. at 87–89). While still generally true, this distinction (fact or opinion) has been refined to look at the deliberative process as a whole: courts look at what function the documents play in the decision-making process, and whether their disclosure would threaten the deliberative process. *See Nat'l Wildlife Fed'n*, 861 F.2d at 1118–19; *see also Coastal States,* 617 F.2d at 867 ("[T]he deliberative process privilege is . . . dependent upon the individual document and the role it plays in the administrative process."). Ultimately, even factual material can be protected, where its disclosure would reveal a decision-maker's mental process. *See Nat'l Wildlife Fed'n*, 861 F.2d at 1118–19.

Accordingly, in order to protect a document as "deliberative" under the deliberative process privilege, an agency must show enough detail so that the court can determine "how each document fits into the deliberative process." *Parke, Davis & Co. v. Califano*, 623 F.2d 1, 6 (6th Cir. 1980).

---

[3] EPA, Corps, and FWS each submitted privilege logs in a spreadsheet-style list giving pertinent information. (*See* Pls.' Letter Exs. A, B, & C, respectively.) The EPA additionally gave information about the position of each employee referenced. (*See id.* Ex. A at 7–8.) The EPA also grouped its withheld documents into six categories, and for each group submitted a one paragraph description stating the nature of the material, and claiming that the documents were pre-decisional and deliberative. (*See id.* Ex. A at 8–9.) Additionally, Agencies' letter brief includes declarations by agency officials attesting to the privileged nature of the documents. (Defs.' Letter Exs. 12–14.)

6

The agency should point to the decision or policy for which the agency prepared the document. *See Senate of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dept. of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987). Conclusory statements that a document is deliberative do not suffice. *See id.* (defining conclusory as "no factual support . . . provided for an *essential* element of the claimed privilege . . . .") (emphasis in original); *see also Parke, Davis & Co.*, 623 F.2d at 6; *Coastal States*, 617 F.2d at 861. Similarly, an index of documents, providing just basic information and a brief description, is inadequate even when accompanied by conclusory affidavits. *See Coastal States*, 617 F.2d at 861. On the other hand, a detailed declaration from senior agency staff, explaining how the withheld material fits into the decision-making process, can provide enough information to protect a document, or even a group of clearly-related lower-level documents such as memos and exchanges. *See Moye*, 376 F.3d at 1280.

In the present case, Agencies claim the deliberative process privilege for 80 documents.[3] (*See* Pls.' Letter, Exs. A–C.) For each document, Agencies identified the date, the individuals to and from whom the document was sent, and a brief statement describing the document (e.g. "Email re: strategy for developing Conceptual Strategy"). (*See id.* Ex. A at 2:18.) Additionally, the EPA went further by identifying each employee's position within the agency, and grouping the documents into six categories, with descriptions for each category as to why the documents are pre-decisional, and why they are deliberative. (*See id.* Ex. A at 7–9.) Each agency provided a declaration from a senior agency official, generally attesting to the fact that the documents are deliberative and pre-decisional. (*See* Defs.' Letter, Exs. 12–14.)

The declarations by senior agency officials are not sufficient. These declarations merely assert conclusory statements in a boilerplate format. (*See* Defs.' Letter, Exs. 12–14.) The statements do not assert the detail required to show the individual documents' role in the decision making process. *See Parke, Davis & Co.*, 623 F.2d at 6; *Senate of Puerto Rico,* 823 F.2d at 585; *Coastal States*, 617 F.2d at 861. Indeed, the declarations only pertain to a sample of the documents,

---

[3] Seventy-four documents were withheld under the deliberative process privilege by EPA, four by Corps, and two by FWS. (*See* Pls.' Letter, Exs. A–C.)

and do not assert any basis for protecting the majority of the documents.  (*See* Defs.' Letter, Exs. 12–14.)

The information provided in the Agencies' spreadsheet-style privilege logs is more helpful, but still lacking.  (*See* Pls.' Letter Exs. A–C.)  The basic information given by FWS and Corps is similar to the index data that was insufficient for the D.C. Circuit.[4]  *See Coastal States*, 617 F.2d at 861.  EPA goes slightly further, by providing more information about the six groups of documents, in footnotes to its privilege log.  (*See* Pls.' Letter Ex. A at 8–9.)  Nonetheless, even EPA's showing is not sufficient.  It approaches the standard that was sufficient for the Eleventh Circuit, but lacks the detailed affidavit that was present in that case.  *See Moye*, 376 F. 3d at 1280.

Plaintiffs object to the nature of the privilege logs as a whole, not to the protection of any individual document.  As discussed above, the Court agrees with Plaintiffs regarding the insufficiency of the logs of FWS and Corps.  Regarding EPA's logs, it appears to the Court that enough information may be present in the current record to rule on the protection of some individual documents, but not all.  EPA's case for protecting documents would be strengthened by more detailed, document-specific analysis.  Regardless, this Court finds it prudent to defer ruling on the applicability of the privilege to specific documents until it has ensured that Plaintiffs receive sufficient information from Agencies to be able to raise document-specific objections.

Accordingly, the Court will require Agencies to supplement their privilege logs with more detailed information as to how the documents fit into the deliberative process.  Agencies' submission should, where appropriate, include affidavits and explanations by senior staff.  After this, if Plaintiffs still object to the protection of specific documents, they may raise their objections to those documents on a timetable to be established by further order of the Court.  *See Mink*, 410 U.S. at 92–93 (requiring *in camera* review only where necessary, when agency cannot provide sufficient justification).

**2.     Agencies Need Not Prove That Every Disclosure Would Chill Frank Communication.**

---

[4] For example, the FWS' first document is said to contain status reports and recommendations, but the description provides no explanation for why the status of a project would be deliberative, or how an opinion on project status plays a part in the deliberative process.  (*See* Pls.' Letter Ex. C at 1.)

8

Plaintiffs' second objection to the privilege logs contends Agencies have not shown that disclosure of the withheld documents would actually chill frank communication. (Pls.' Letter at 2–3.) In response, Agencies contend that the disclosure would chill deliberation, and that the information in the record is sufficient to lead to that conclusion. (Defs.' Letter at 5.)

The Court finds no basis for requiring Agencies to show that the release of each withheld document would chill agency deliberations. The issue is instead subsumed in the privilege's second prong, "deliberative," as discussed above. If the documents are of a deliberative nature, then they contain the type of opinion and personal analysis, the disclosure of which would adversely impact frank agency deliberations:

> [T]o ensure that agencies are not forced 'to operate in a fishbowl.' . . . courts focus "on . . . whether the disclosure . . . would expose an agency's decision-making process in such a way as to discourage candid discussion . . . . 'We should focus on whether the document in question is a part of the *deliberative process*.' Predecisional materials are privileged 'to the extent that they reveal the mental processes of decision-makers.'"

*Assembly*, 968 F.2d at 921 (internal citations omitted); *see also Carter*, 307 F.3d at 1090 (quoting same).

While the Court must examine whether a given document contains personal opinions of the type that would chill deliberations, an agency does not bear the burden of showing each individual document would actually chill deliberations. *See Coastal States*, 617 F.2d at 866, 869; *Moye*, 376 F.3d at 1281. "It defies reason as well as Supreme Court precedent . . . to decide whether disclosure would in fact discourage frank discussion in some specific case." *Fl. House of Representatives v. U.S. Dept. of Commerce*, 961 F.2d 941, 949 (11th Cir. 1992). Indeed, it is hard to imagine that an individual document's protection would affect the atmosphere of an agency workplace; rather, the impact comes from the general protection of a type of documents.[5]

---

[5] This chilling effect of deliberative material underlies the privilege generally:
[C]ompelled disclosure of the memoranda almost certainly injures the quality of agency decisions. It chills frank discussion and deliberation in the future among those responsible for making governmental decisions. It also encourages the [agency] to have deliberative reports and recommendations prepared only by those economists who will draw the conclusions sought by the [agency].
*Warner*, 742 F.2d at 1162.

9

1    Accordingly, the Court finds that Agencies do not need to establish harm from the release of
2 each specific document. Agencies need only show that the document is of the type likely to cause
3 harm if released, i.e., a document that is deliberative.

### C. The Court Will Not Determine Whether the Qualified Privilege Is Overcome By Plaintiffs' Need At This Time.

Plaintiffs contend, in the alternative, that if Agencies have properly claimed the deliberative process privilege, the documents in question should be released because the privilege is qualified, and Plaintiffs' need for the documents outweighs Agencies' interest in asserting the privilege. (Pls.' Letter at 3.)

The deliberative process privilege is qualified, and courts may order discovery even if the government meets its burdens of showing the document is pre-decisional and deliberative. *Warner*, 742 F.2d at 1161; *see also Chevron U.S.A. Inc. v. United States*, 2008 WL 312297 at *16–17 (Fed. Cl. Jan. 31, 2008) (describing a burden shifting process where the government must show "pre-decisional" and "deliberative," and then the Plaintiffs subsequently bear the burden to show that the privilege should be waived in the instant case). "Among the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Warner*, 742 F.2d at 1161. Particularly, where the government's decision process itself is in question, discovery may be appropriate. *Greenpeace v. Nat'l Marine Fisheries Serv.*, 198 F.R.D. 540, 543 (W.D. Wash. 2000); *Mr. and Mrs. "B" v. Bd. of Educ. of Syosset Cent. Sch. Dist.*, 35 F. Supp. 2d 224, 230 (E.D.N.Y. 1998); *NRDC v. Fox*, 1998 WL 158671 at *5 (S.D.N.Y. Apr. 6, 1998).

In the present case, Plaintiffs contend their need for the documents is significant enough that all documents withheld by Agencies should be released. (Pls.' Letter at 3.) This assertion appears overly broad at first glance, but can best be vetted by the Court after Agencies have further substantiated the basis for the privilege. After Agencies have submitted more detailed privilege logs, Plaintiffs and the Court will be better able to assess whether some or all documents, even if otherwise privileged, should nonetheless be disclosed.

10

Plaintiffs also assert that releasing otherwise privileged documents is appropriate in the present case because the Court specifically ordered discovery of Agencies' decision-making process. (*See* Pls.' Letter at 3; Aug. 29 Order at 1.)  The Court's August 29, 2007 Order does allow discovery in order to establish that Agencies' decision-making process was indicative of final action. (*See* Mem. In Support of Discovery.)  However, notwithstanding the above, the Court's August 29, 2007 Order does not grant discovery into the decision-making process more broadly nor vitiate the deliberative process privilege. (*See* Aug. 29 Order at 1.)

Accordingly, the Court will not address whether otherwise privileged documents should be subject to discovery until after Agencies provide more specific information, allowing Plaintiffs to tailor their objections on a document-specific level.  Redacted disclosure may be particularly appropriate in this case, where Agencies wish to keep employee opinions protected, yet still shed light on the process.

## II.   Interrogatories

The parties contest three groups of interrogatories which Plaintiffs served on Agencies.  The groups of interrogatories at issue are: (1) Interrogatory Nos. 7–11, (2) Interrogatory Nos. 15–17 (and corresponding Request for Admission Nos. 10–15), and (3) Interrogatory Nos. 20 and 21. (*See* Pls.' Letter at 4–5; Defs.' Letter at 2–3.)  Agencies have responded partially, but generally object to the alleged overbreadth of Plaintiffs' requests. (*See* Defs.' Letter at 2–3.)  Specifically, Agencies contend that the requests go beyond the scope of discovery ordered by the Court, which was narrowly drawn to the question of whether or not Agencies' decision was a "final agency action" as explicated in *Bennett*, 520 U.S. at 177–78. (*See Id.*; Aug. 29 Order at 1.)

### A.   Agencies Sufficiently Answered Interrogatory Nos. 7–11.

In Interrogatory Nos. 7-11, Plaintiffs asked Agencies to identify and/or describe any information or details that relate to positions taken by Agencies or developers on alternative proposals for preserve area boundaries and mitigation rations; descriptions of all alternative proposals considered, but not adopted, and the proponents of such proposals; and the basis for rejecting alternative proposals for mitigation ratios. (*See* Pls.' Letter, Exs. D, F, H.)  Plaintiffs argue that Agencies have not disclosed the basis for their rejection of interagency positions regarding each

11

1 alternative identified, nor explained which proposals came from which agencies and when, nor
2 identified the alternative mitigation ratios considered and the reasons for their rejection. (Pls.' Letter
3 at 4.) Agencies contend that these requests are overly broad, and exceed the narrow scope of
4 discovery authorized by the Court. (Defs.' Letter at 2.)

The Court authorized discovery specifically tailored to Agencies' decision-making process regarding preserve area boundaries and mitigation ratios for offsite preservation that led to the Conceptual Strategy. (*See* Aug. 29 Order at 1.) The purpose for allowing such discovery was to develop the record relevant to the legal determination of whether the Conceptual Strategy marked the consummation of a decision-making process within the meaning of *Bennett v. Spear*, 520 U.S. at 177–78. The Court's authorization did not extend to blanket discovery of everything that was done or considered in the process that led to the Conceptual Strategy. Because the information sought by these interrogatories exceeded the scope of the jurisdictional discovery appropriate here, the Court will require no further response from Agencies to Interrogatory Nos. 7–11 at this time.

### B. Agencies Sufficiently Answered Interrogatory Nos. 15 & 16 (Corps/FWS), 16 & 17 (EPA), and Request For Admission Nos. 10–15.

The interrogatories in question ask Agencies to identify and describe the reasoning by which they determined not to prepare NEPA or ESA compliance documents while preparing the Conceptual Strategy. (*See* Pls.' Letter, Exs. D, F, H.) The corresponding requests for admission seek admissions that such documents were discussed at various meetings. (*See* Pls.' Letter, Exs. E, G, I.) Plaintiffs contend these questions are relevant because the decision to comply with NEPA or ESA would have affected Agencies' decision-making process. (*See* Pls.' Letter at 5.) Agencies contend the requests are outside the scope of the Court's narrow discovery authorization. (*See* Defs.' Letter at 3.)

The Court agrees with Agencies' assertion that the requests suffer from overbreadth. Compliance issues are outside of the scope of authorized discovery. A generalized discussion of NEPA requirements or ESA Section 7 requirements would not yield any relevant discovery, as authorized in the Court's August 29, 2007 Order. Because the information sought by these

1 interrogatories exceeded the scope of the jurisdictional discovery appropriate here, the Court will not
2 require further responses at this time.

### C. Agencies Shall Respond More Fully To Interrogatory Nos. 20 (Corps/FWS) and 21 (EPA).

Interrogatory Nos. 20 (Corps/FWS) and 21 (EPA) request that Agencies identify and describe the process by which they "arrived at the boundaries of the Preserve Areas . . . of the Conceptual Strategy." (*See* Pls.' Letter Exs. D, F, H (internal quotations and citation omitted).) Agencies object to these interrogatories as overly broad and pertaining to privileged materials, and respond by providing descriptions of the decision-making process in only the most general of terms. (*See id.*; Defs.' Letter at 3.) Plaintiffs contend that more sufficient responses are warranted, as the interrogatories are within the scope of discovery the Court ordered August 29, 2007.

The Court agrees with Plaintiffs. The Court authorized discovery specifically pertaining to the decision-making process, in order to determine whether the decision in question constitutes a "final agency action." (*See* Aug. 29 Order at 1.) Plaintiffs seek to prove that the Conceptual Strategy consummated the decision-making process. *See Bennett*, 520 U.S. at 177–78. Accordingly, the process by which the decision was reached is relevant for the purpose of the currently-authorized discovery. Agencies' responses are too threadbare to constitute adequate responses to these interrogatories. Agencies also have not established that the deliberative process privilege would shield this information, because they have not demonstrated that disclosing the process by which their decision was reached would improperly shed light on any "deliberative" opinions of agency staff.

The Court will therefore require further and more detailed responses to these interrogatories.

///
///
///
///
///
///

13

**CONCLUSION**

For the foregoing reasons, the Court **ORDERS** Agencies to supplement their privilege logs with more detailed information as to how the documents in question fit into the deliberative process. The Court additionally **ORDERS** FWS and Corps to respond more fully to Interrogatory No. 20, and EPA to respond more fully to Interrogatory No. 21.  Agencies shall provide justification for the deliberative process privilege and responses to said interrogatories **within 30 days of the issuance of this Order**.  In all other respects, the Court denies the relief sought by Plaintiffs.

**IT IS SO ORDERED.**

Dated: April 3, 2008

_____
MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE