United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CALIFORNIA NATIVE PLANT SOCIETY, et al.,

    Plaintiffs,

    v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,

    Defendants.
_____/

No. C 06-3604 PJH

**ORDER GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS**

Now before the court is the motion of plaintiffs California Native Plant Society, Defenders of Wildlife, and Butte Environmental Council for attorneys' fees and costs incurred as a result of a civil action brought against defendants United States Environmental Protection Agency, United States Fish and Wildlife Service and United States Army Corps of Engineers (the "Corps"). Having carefully reviewed the papers and considered the relevant legal authority, and good cause appearing, the court hereby GRANTS plaintiffs' motion for the reasons set forth below.

**BACKGROUND**

On June 7, 2006, plaintiffs filed an initial complaint against defendants for conduct concerning application approvals of residential developments that would affect vernal pools outside Sacramento (the "area"). Specifically, in June 2004, defendants consulted with landowners, developers, and local agencies to create a conceptual strategy for development in the area. The conceptual strategy outlined development principles and specified that defendants would "use the strategy to aid in the review of proposed development" applications – even as defendants would continue to evaluate permit

1 applications on a case-by-case basis. Over the next three years, defendants awarded a
2 number of development permits after conducting Environmental Assessments (EAs) with
3 Findings of No Significant Impacts (FONSIs).

4 Plaintiffs' complaint alleged that (1) defendants violated the National Environmental
5 Protection Act (NEPA) by failing to subject the conceptual strategy to NEPA analysis;
6 (2) defendants failed to follow proper NEPA procedures in its EAs; (3) defendants violated
7 the Endangered Species Act (ESA) by creating the conceptual strategy without following
8 ESA's consultation requirements; and (4) defendants violated the ESA by issuing permits
9 without using the best science available to consider impacts on endangered species.

10 On November 3, 2006, the court denied plaintiffs' motion for a temporary restraining
11 order (TRO).[1] The court evaluated all four claims. As for the first and third claims (the
12 direct challenges to the conceptual strategy), the court found plaintiffs had failed to show
13 the requisite likelihood of success on the merits because the conceptual strategy was not a
14 final agency action, and thus not reviewable under the Administrative Procedures Act
15 (APA). On the fourth claim, the court found plaintiffs had failed to comply with the ESA's
16 notice requirements and failed to properly plead the claim. Finally, as for the second claim,
17 the court found that "based on the materials before the Court, Plaintiffs have failed to raise
18 a serious question that the Federal Defendants failed to comply with NEPA's procedural
19 requirements." Doc. no. 73 at 9.

20 Plaintiffs subsequently filed a motion for a preliminary injunction (PI), and on July 10,
21 2007, the court issued an order granting that motion. The court found that plaintiffs still

---

[1] Most of the litigation in this case occurred before the Supreme Court issued Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008), which rejected the "possibility" of harm as sufficient to obtain a preliminary injunction. Accordingly, in both the TRO denial and the below-mentioned preliminary injunction, the court considered whether plaintiffs established "either a combination of probable success on the merits and the possibility of irreparable harm, or that serious questions are raised and the balance of hardships tips sharply in plaintiff's favor." Earth Island Inst. v. U.S. Forest Serv., 442 F.3d 1147, 1158 (9th Cir. 2006), abrogated in part by Winter, 555 U.S. at 21-22. The Ninth Circuit has held that the "serious questions" approach, when applied as part of the Winter test, remains viable. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir. 2011).

2

failed to show that they were likely to succeed on their first claim, and still failed to raise serious questions on their third and fourth claims.

With respect to the second claim, however, based on a supplemented record, the court found that (1) plaintiffs "have raised a serious question as to whether the Corps took the requisite 'hard look' at the cumulative impacts of the proposed development projects," and that (2) "the EAs do not reflect the requisite 'hard look' at potential alternative preserve configurations, nor do they contain adequate discussion. . . ." Doc. no. 128 at 26-7. The court then weighed the balance of hardships and found "it is beyond dispute that vernal pool habitat will be permanently destroyed in the development process" and "[t]he risk of such permanent destruction absent the benefit of an adequate cumulative impacts or alternatives analysis under NEPA tips the balance of the hardships in Plaintiffs' favor." Id. at 34. The court accordingly ordered a suspension of further permitting and groundbreaking activities until resolution of the case on the merits.

After the PI was issued, the parties engaged in jurisdictional discovery on the first claim and the government filed administrative records. In May 2008, the Corps announced that it would prepare an Environmental Impact Statement (EIS) to address the cumulative impacts of the projects it had formerly approved individually with EAs. After this announcement, the parties jointly moved for a stay of the litigation, which the court granted in December 2008. The stay lasted until September 10, 2011, while the government prepared the EIS. Ultimately, under the EIS and tiered supplemental EAs for the specific permit applications, direct vernal pool impacts fell 2.6 acres - from 48.95 acres at the beginning of the litigation to 46.35 acres at the end of the litigation. After the stay expired, the parties engaged in settlement talks before finally entering a non-enforceable joint stipulation to dismiss the case in March 2013.

In June 2013, plaintiffs filed this motion for award of attorneys' fees and costs. They request $721,008.56 in attorneys' fees and $3,523.72 in costs under the Equal Access to Justice Act (EAJA).

## DISCUSSION

**A.    Legal Standard**

The EAJA provides that "a court shall award [fees] to a prevailing party other than the United States . . . incurred by that party in any civil action . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C § 2412(d)(1)(A).  Fees are thus awardable if (1) plaintiffs are a prevailing party, (2) the government was not substantially justified and there are no special circumstances that would make an award unjust, and (3) the fees are reasonable.

To qualify as a prevailing party, a plaintiff must achieve "a material alteration in the legal relationship of the parties" that is "judicially sanctioned." Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources, 532 U.S. 598, 605 (2001).  Material alteration occurs when a plaintiff wins sought-after relief that benefits the plaintiff and alters the defendant's behavior. Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt., 589 F.3d 1027, 1030 (9th Cir. 2009); Fischer v. SJB–P.D., Inc., 214 F.3d 115 (9th Cir. 2000).  A preliminary injunction order suffices to constitute judicial sanction. Watson v. County of Riverside, 300 F.3d 1092, 1093 (9th Cir. 2002).

A court determines whether the position of the United States was substantially justified by examining both the government's litigation position and underlying agency decision. Andrew v. Bowen, 837 F.2d 875, 880 (9th Cir. 1988).  Substantial justification requires "a reasonable basis in law and fact." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  The government bears the burden of showing substantial justification. ORNC v. Marsh, 52 F.2d 1485, 1492 (9th Cir. 1995).

Special circumstances exist when equitable factors dictate that fees should not be shifted – for instance, when the United States advances novel arguments in good faith. Abela v. Gustafson, 888 F.2d 1258, 1266 (9th Cir. 1989).

Under the EAJA, the court has discretion to determine what fees are reasonable to award. Commissioner, INS v. Jean, 496 U.S. 154, 160-61 (1990).  The starting point for determining reasonable fees is by multiplying a reasonable hourly rate by the reasonable

4

hours of work expended on the case. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Further, the court should consider "the relationship between the amount of fees awarded and the results obtained." Jean, 496 U.S. at 163 n. 10. This requires two determinations: (1) whether the claims that plaintiff prevailed on and failed to prevail on were related, and (2) whether the plaintiff achieved "excellent results," or merely "partial or limited success." Hensley, 461 U.S. at 434-36.

The default fee rate for attorneys under EAJA is $125 per hour. 28 U.S.C. § 2412(d)(2)(A). This rate applies "unless the court determines that an increase in cost of living or a special factor . . . justifies a higher rate. Id. An attorney's specialization in environmental law can be a special factor. Love v. Reilly, 924 F.2d 1492, 1496 (9th Cir. 1991).

**B.    Fee Award Warranted Under EAJA**

Plaintiffs have demonstrated that they are entitled to an award of reasonable fees because they are the prevailing party and the government has failed to show its position was substantially justified or that special circumstances make an award unjust.

**1.    Prevailing Party**

Plaintiffs are prevailing parties by way of the preliminary injunction that halted permitting and construction activities and remained in effect until the case was dismissed. See, e.g., Watson v. County of Riverside, 300 F.3d 1092, 1093 (9th Cir. 2002) ("We hold today that a plaintiff who succeeds in obtaining a preliminary injunction can be deemed a 'prevailing party. . . ."); Richard S. v. Dep't of Dev. Services of State of California, 317 F.3d 1080, 1089 (9th Cir. 2003) (holding that "the district court erred as a matter of law when it denied plaintiffs prevailing party status based on their success in obtaining a preliminary injunction"); Williams v. Alioto, 625 F.2d 845, 847 (9th Cir. 1980) ("We conclude that by obtaining the preliminary injunction appellees 'prevailed . . . .'"). The preliminary injunction that plaintiffs obtained satisfies Buckhannon and renders plaintiffs prevailing parties because it altered the legal relationship between the parties and carried the stamp of judicial sanction. See Buckhanannon, 532 U.S. at 605 (relief "on the merits" occurs when

the material alteration of the parties' legal relationship is accompanied by "judicial imprimatur on the change").

Under Ninth Circuit authority, a preliminary injunction satisfies the judicial imprimatur requirement for prevailing party status if it is based on a finding that the plaintiff has shown a likelihood of success on the merits. Higher Taste, Inc. v. City of Tacoma, 717 F.3d 712, 716 (9th Cir. 2013). Here, the court found that plaintiffs raised serious questions going to the merits of their NEPA claim after conducting a hearing and issuing findings of fact and conclusions of law, thereby ensuring that the preliminary relief obtained by plaintiffs was the product of more than merely a "'nonfrivolous but nonetheless potentially meritless lawsuit.'" Id. (quoting Buckhannon, 532 U.S. at 606).

The preliminary injunction issued here also satisfies the requirement that the relief obtained materially altered the parties' legal relationship, at least for the time it remained in effect. Id. "A material alteration of the parties' legal relationship occurs when 'the plaintiff can force the defendant to do something he otherwise would not have to do.'" Id. (quoting Fischer v. SJB–P.D. Inc., 214 F.3d 1115, 1118 (9th Cir. 2000)). Even in the absence of a final judgment on the merits, plaintiffs are prevailing parties eligible for a fee award where they obtain a preliminary injunction and the case is subsequently rendered moot by the defendant's own actions. Id. at 717. This circumstance presents "no concern that the relief the plaintiff won at the preliminary-injunction stage will prove to be ephemeral. The defendant's action in rendering the case moot ensures that the injunction's alteration of the parties' legal relationship will not be undone by subsequent rulings in the litigation." Id.

The government insists that the preliminary injunction does not establish plaintiffs as the prevailing party because, under Klamath Siskiyou, the preliminary injunction did not "award plaintiff[s] much of the relief they sought." This case is distinguishable from Klamath Siskiyou and plaintiffs have shown that they are the prevailing party based on their success in obtaining a preliminary injunction.

The plaintiff in Klamath Siskiyou sued to prevent the Bureau of Land Management (BLM) from proceeding with a timber sale. Id., 589 F.3d at 1029. While the litigation was

6

ongoing, the parties entered an enforceable stipulation specifying that BLM would stay authorization of the sale until the next season, even though BLM's own guidelines barred proceeding with the sale until the next season regardless of the stipulation. Id. Eventually, after the litigation ended, plaintiff sued for fees under the EAJA, arguing the enforceable stipulation satisfied the prevailing party standard. Id., 589 F.3d at 1032.

In reaching its decision, the court in Klamath Siskiyou relied on two factors that are not present in the instant case. First, the court in Klamath Siskiyou recognized that the plaintiff in that case sued to stop the timber sale altogether, and not merely delay the sale for a season. Thus, the enforceable stipulation failed to provide that plaintiff the relief the plaintiff had sought with the suit.

Here, by contrast, plaintiffs brought their complaint praying that the court would "[s]et aside and vacate the permits issued . . . ." The preliminary injunction did just that, and remained in effect nearly five years until the litigation ended. Plaintiffs obtained the relief they sought.

Further, in Klamath Siskiyou, the court recognized that the stipulation did not alter the relationship between the parties because BLM's own guidelines prevented proceeding with the sale until the next season – the same "relief" the stipulation supposedly yielded. Id. In other words, the "relief" was illusory and "not material in the context of the relief [the plaintiff] sought in this lawsuit." Id.

Here, by contrast, the preliminary injunction prevented issuance of permits that was ongoing and construction that was imminent. Moreover, the Klamath Sikiskiyou court distinguished the stipulation at issue in that case from "a preliminary injunction, which plaintiffs usually seek to prevent the defendant from doing something it would almost certainly have done otherwise." See id. A plaintiff who succeeds in obtaining a preliminary injunction can deemed a prevailing party "even though he did not recover other relief sought in the lawsuit." Watson, 300 F.3d at 1093.

### 2. Substantial Justification and Special Circumstances

Because plaintiffs carried their burden to show that they are prevailing parties, under EAJA, the burden shifts to the government to show the government's position was substantially justified or special circumstances make an award unjust. See ORNC, 52 F.2d at 1492. The government does not meet its burden.

The government attempts to cloud the substantial justification analysis by noting the many ways the government's position was reasonable. For instance, the government did not subject the conceptual strategy to NEPA or ESA analysis because the conceptual strategy probably was not a final administrative action. Whether that government action was reasonable is not relevant to its position on the adequacy of the EAs. When determining whether the government was substantially justified, the question is whether the government was substantially justified with its actions or defense of the actions that yielded plaintiffs their prevailing party status. The focus in this case is thus squarely upon the second claim and whether the government's consideration (or lack thereof) of cumulative impacts and alternatives in the initial EAs was reasonable.

On this point, the government eschews a direct defense of its actions and instead argues its actions must have been reasonable because the court denied a temporary restraining order based on the second claim. This argument ignores that the court issued its temporary restraining without the benefit of the expanded record that was before it with the preliminary injunction motion. Without some sort of specific argument for why the government's consideration of cumulative impacts and alternatives was reasonable, the government cannot and does not meet its burden to show substantial justification.

The government also argues that the financial hardship an award would wreak on the Sacramento Office of the Army Corps of Engineers constitutes special circumstances that make an award unjust. The government, however, cites no authority for the proposition that the government's financial hardship can constitute special circumstances under EAJA. The EAJA "special circumstances" exception is intended to be narrow, and permitting financial hardship to serve as a special circumstance, especially in a time of

8

sequesters and cutbacks, would potentially swallow EAJA's fee award provision whole. The government's argument here does not persuade the court that special circumstances make an award unjust.

### 3. Reasonable Fees

Plaintiffs motion for $721,008.56 in attorneys' fees and $3,523.72 in costs. The court will award plaintiffs' costs in full, but finds $721,008.56 is not a reasonable fee for this case.

#### a. Reasonable Rate

The court applies the maximum hourly rate under EAJA, as adjusted by the Ninth Circuit for increases in the cost of living,[2] for work performed each year as follows:

| Year | Rate |
|---|---|
| 2013: | $186.55 |
| 2012: | $184.32 |
| 2011: | $180.59 |
| 2010: | $175.06 |
| 2009: | $172.24 |
| 2008: | $172.85 |
| 2007: | $166.46 |
| 2006: | $161.85 |
| 2005: | $156.79 |

The court determines that the substantially higher rates requested by plaintiffs are not warranted under the statutory exception for limited availability of qualified attorneys because this litigation did not require "distinctive knowledge" or "specialized skill." Thangaraja v. Gonzales, 428 F.3d 870, 876 (9th Cir. 2005). Plaintiffs brought this action to challenge defendants' creation of a conceptual strategy for the proposed development, the issuance of permits, and the adequacy of the EAs under NEPA. With respect to the NEPA claim challenging the failure of the EAs to consider an adequate range of alternatives, the

---

[2] "Statutory Maximum Rates Under the Equal Access to Justice Act," available at www.ca9.uscourts.gov.

9

court found that the EAs lacked independent analysis, raising a serious question as to whether the Corps took the requisite "hard look" at the cumulative impacts of the proposed development projects. Doc. no. 128 at 26. However, the primary issues raised in plaintiffs' motion for preliminary injunction were not directed at analysis of the available environmental information, but rather on threshold legal questions of whether the challenged actions amounted to actionable agency actions or final agency actions that were subject to judicial review. These issues did not require specialized skill in environmental litigation so as to warrant rate enhancement under EAJA.

Plaintiffs contend that their claims required "extensive understanding [of] the APA's 'final agency action' requirement in order to conduct discovery," after the preliminary injunction was issued, but no dispositive motions were filed in this case and plaintiffs have not demonstrated that counsel's distinctive knowledge, though advantageous, was required by this litigation. While a specialty in environmental law could be a special factor warranting an enhancement of the statutory rate in some cases, the court finds that "counsel's specialized skill was not needful for the litigation in question." Thangaraja, 428 F.3d at 876 (citation and quotation marks omitted). "The fact that prevailing hourly rates in a community might dissuade attorneys from taking a case at [the statutory] hourly rate was not the type of 'limited availability' that Congress had in mind, since implicit in the language of § 2412(d) was a Congressional determination that [the statutory rate] was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be." Pirus v. Bowen, 869 F.2d 536, 541 (9th Cir. 1989) (quoting Pierce v. Underwood, 487 U.S. 552, 572 (1988)). Plaintiffs' request for an award of fees at market rates is therefore denied, and the statutory maximum rates, as adjusted, will be applied to the work of plaintiffs' attorneys. The rates requested for law student work are reasonable and do not exceed the statutory maximum rates.

### b. Reasonable Hours

The parties dispute the reasonableness of the number of hours spent by plaintiffs' counsel. Plaintiffs have demonstrated that their attorneys seek compensation for time

1  spent on work reasonably directed to achieving plaintiffs' goals, and that the number of
2  claimed hours has been reviewed and reduced to eliminate potential inefficiencies,
3  including the work of law students.  Sivas Decl. ¶ 10; Levine Decl. ¶ 23.  Plaintiffs have
4  demonstrated that time spent on preparing the complaint, litigating the TRO and PI,
5  conducting discovery, engaging in settlement negotiations, and preparing the fee motion
6  was reasonable and compensable.
7      Defendants have not shown that the work claimed by plaintiffs was excessive,
8  redundant or unnecessary.  Defendants' proposition that the court parse through the time
9  records to distinguish routine tasks from specialized legal tasks is not supported by
10 controlling authority and would impose an undue burden on the court.

   **c.**  **Lodestar Calculation**

Based on the hourly rates authorized by EAJA and the attorney time claimed by plaintiffs, the lodestar is $325,155.74, calculated as follows.  The court notes that the Environmental Law Clinic counsel's billing summary failed to break down the number of hours spent by each attorney by year, making the lodestar calculation quite difficult.  Where an attorney or law student billed for more than one year, the hourly rates for those years are averaged.

| Attorney | Hourly Rate | Number of Hours | Fee |
| --- | --- | --- | --- |
| Neil Levine 2005 | $156.79 | 18.6 | $2,916.29 |
| Neil Levine 2006 | $161.85 | 62.8 | $10,164.18 |
| Neil Levine 2007 | $166.46 | 148.7 | $24,752.60 |
| Neil Levine 2008 | $172.85 | 96.2 | $16,628.17 |
| Neil Levine 2010 | $175.06 | 0.2 | $35.01 |
| Neil Levine 2011 | $180.59 | 31.5 | $5,688.59 |
| Neil Levine 2012 | $184.32 | 42.2 | $7,778.30 |
| Neil Levine 2013 | $186.55 | 115.7 | $21,583.84 |
| C. Segall 2005-6 | $100.00 | 158.01 | $15,801.00 |
| D. Hultz 2007-8 | $110.00 | 259.75 | $28,572.50 |

| D. Sivas 2005-13 | $172.97 | 446 | $77,143.63 |
| --- | --- | --- | --- |
| E. Medlin 2008 | $110.00 | 152.90 | $16,819.00 |
| K. Rosencrans | $125.00 | 51.75 | $6,468.75 |
| L. Russin 2007-8, 2011-13 | $178.15 | 301.80 | $53,766.88 |
| R. Zwillinger 2007-8 | $110.00 | 336.70 | $37,037.00 |
| TOTAL | | | $325,155.74 |

Sivas Decl., Ex. C; Levine Decl. Ex. A; Second Levine Decl.

### d. Downward Adjustment

Under Hensley, 461 U.S. at 433, the "prevailing party" requirement is "a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.'" In Comm'r, I.N.S. v. Jean, 496 U.S. 154, 161 (1990), the Supreme Court held that "[t]he EAJA prescribes a similar flexibility." "While the parties' postures on individual matters may be more or less justified, the EAJA - like other fee-shifting statutes - favors treating a case as an inclusive whole, rather than as atomized line-items." Id. at 161-62. Hensley requires the court to consider the degree of success obtained. Here, because plaintiffs achieved only partial or limited success, the lodestar amount is an excessive fee and will be adjusted downward. Hensley, 461 U.S. at 437.

As plaintiffs concede, they prevailed on only one of four claims on their motion for preliminary injunction, i.e., their challenge to the individual EAs issued for each development project. Plaintiffs did not prevail on their claims under NEPA and ESA challenging the overarching conceptual strategy, which was the subject of the parties' jurisdictional discovery and discovery disputes from about August 2007 to October 2008 when the parties filed a joint motion to stay the action. Fee Mot. at 14-15 (doc. no. 325). Although the jurisdictional discovery related to the conceptual strategy concerned issues that were intertwined with the issues concerning the adequacy of the EAs, plaintiffs did not

prevail on their challenges to the conceptual strategy, and the fee award will be reduced to reflect that plaintiffs' success was limited to their NEPA claim directly challenging the EAs.

The billing summary of the Environmental Law Clinic attorneys is not categorized, making a difficult task of deducting attorneys' time to reflect accurately the limited success achieved. The time billed by attorneys Sivas and Russin, for example, includes time spent meeting with law students about an unfiled "SJ brief," consulting on discovery, reviewing the second and third amended complaints which added claims on which plaintiffs did not prevail, and significant travel time which the court will not allow for compensation. Attorney Neil Levine's billing summary shows that he spent 102.1 hours on discovery, or 22% of his total 461 hours of work, excluding time spent on the fee motion. Using this percentage as a guideline, the fees for attorney time will be reduced by 22% to reflect plaintiffs' partial success on the NEPA challenge to the EAs but not on the remaining claims challenging the conceptual strategy which generated the jurisdictional discovery work.

Plaintiffs note that law students R. Zwillinger and D. Hultz did the majority of student work on the jurisdictional discovery, which is reflected on the billing summary. Sivas Decl. ¶ 9. A review of the billing summary reflects that most of the time billed by Hultz was for work on discovery and other work for claims on which plaintiffs did not prevail or unfiled motions work, e.g., "3d claim re ESA consultation," "research argument for Claim 4," "SJ motion." Zwillinger's records show that she also worked primarily on discovery and unfiled motions work. The fees charged for these students' work ($28,572.50 + $37,037.00 = $65,609.50) is therefore deducted from the lodestar.

The court determines that a reasonable fee award, adjusted to reflect degree of success, is $211,045.60, calculated as follows:

| Attorney | Lodestar Fee | Deduction | Adjusted Award |
|---|---|---|---|
| Neil Levine | $89,546.98 | $19,700.34 | $69,846.65 |
| Deborah Sivas | $77,143.63 | $16,971.60 | $60,172.03 |
| Leah Russin | $53,766.88 | $11,828.71 | $41,938.17 |
| E. Medlin | $16,819.00 | -0- | $16,819.00 |

| C. Segall | $15,801.00 | -0- | $15,801.00 |
| K. Rosencrans | $6,468.75 | -0- | $6,468.75 |
| TOTAL | | | $211,045.60 |

## D. Costs

Plaintiffs' costs are awarded in full in the amount of $3,523.72.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion for award of fees and costs is GRANTED in the amount of $211,045.60 in fees and $3,523.72 in costs, for a total award of $214,569.32.

**IT IS SO ORDERED.**

Dated: December 19, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge